Izaak D. Schwaiger, SBN 267888
**SCHWAIGER LAW FIRM**
130 Petaluma Avenue, Suite 1A
Sebastopol, CA 95472
Tel. (707) 595-4414
Facsimile: (707) 581-1983
E-mail: izaak@izaakschwaiger.com

John H. Scott, SBN 72578
**SCOTT LAW FIRM**
1388 Sutter Street, Suite 715
San Francisco, California 94109
Telephone: (415) 561-9601
Facsimile:  (415) 561-9609
john@scottlawfirm.net

Attorneys for the Plaintiffs ESTATE OF DAVID WARD,
by and through successor in interest, ERNESTINE WARD,
and ERNESTINE WARD individually.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ESTATE OF DAVID WARD, by and through successor in interest, ERNESTINE WARD, and ERNESTINE WARD INDIVIDUALLY,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SONOMA, MARK ESSICK, CHARLES BLOUNT, JASON LITTLE, ANDREW BAUER and DOES 1-25, inclusive.<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **EXCESSIVE FORCE**<br>2. **FAILURE TO INTERVENE**<br>3. **LOSS OF FAMILIAL ASSOCIATION**<br>4. **SUPERVISORY LIABILITY**<br>5. **MUNICIPAL LIABILITY**<br>6. **WRONGFUL DEATH/NEGLIGENCE PER SE**<br>7. **NEGLIGENT SUPERVISION, TRAINING, AND RETENTION**<br><br>**(42 U.S.C. SECTION 1983 AND PENDENT STATE CLAIMS)**<br><br>*JURY TRIAL demand* |

COME NOW PLAINTIFFS, ESTATE OF DAVID WARD, by and through successor in interest, ERNESTINE WARD, and ERNESTINE WARD individually, who complain of defendants, and each of them, and alleges as follows:

### INTRODUCTION

1. This civil rights action arises out of the killing of David Ward, a disabled man wrongly believed to be in possession of a stolen car, who was beaten, tasered, and choked by Sonoma County Sheriff's deputies until he died.

2. David Ward was a loving son to his mother, ERNESTINE, and he was loved deeply in return. His death has been an immeasurable loss and sadness to his mother.

3. Charles Blount, the former Sonoma County deputy sheriff primarily responsible for David's death, had a known and well-documented history of excessive force, particularly surrounding the use of chokeholds. It was a common belief among Sheriff's deputies that Mr. Blount had a propensity for excessive force, and that he was "going to kill someone one of these days," yet department leadership knowing these dangers unconscionably disregarded them, failed to discipline or retrain Mr. Blount for prior incidents of unjustifiable violence, and in doing so encouraged and condoned his violence to continue unaddressed and unmitigated until he killed Ernestine Ward's only son.

### JURISDICTION & VENUE

4. This action is brought pursuant to 42 U.S.C. §§ 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343.

5. The claims alleged herein arose in the County of Sonoma in the State of California. Venue for this action lies in the United States District Court for the Northern District of California under 28 U.S.C. § 1391(b)(2).

6. Pursuant to Gov. Code Sec. 910, six-months tort claims were timely submitted to the County of Sonoma and the City of Sebastopol in February of 2020.

7. With respect to Plaintiffs' supplemental state claims, Plaintiffs request that this court exercise supplemental jurisdiction over such claims as they arise from the same facts and circumstances which underlie the federal claims.

**PARTIES**

8. David Ward was an individual residing in Sonoma County, California. The claims made by the ESTATE OF DAVID WARD, are brought by ERNESTINE WARD, the successor in interest to the Estate of David Ward pursuant to California Code of Civil Procedure § 377.32.

9. Plaintiff ERNESTINE WARD is and was, at all relevant times, a resident of Sonoma County, and is the natural mother of decedent David Ward.

10. Defendant COUNTY OF SONOMA is a public entity situated in the State of California and organized under the laws of the State of California. Defendant COUNTY OF SONOMA is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and agencies. At all times relevant to the facts alleged herein, Defendant COUNTY OF SONOMA was responsible for assuring that the acts, omissions, policies, procedures, practices and customs of its employees complied with the laws and the Constitutions of the United States and of the State of California.

11. The Sonoma County Sheriff's Office is a subdivision of Defendant County of Sonoma.

12. At all relevant times, Defendant MARK ESSICK was the elected Sheriff of Sonoma County.

13. At all relevant times, Defendant CHARLES BLOUNT was a deputy sheriff and employee of the County of Sonoma.

14. At all relevant times, Defendant JASON LITTLE was a deputy sheriff and employee of the County of Sonoma.

15. At all relevant times, Defendant ANDREW BAUER was a police officer and employee of the City of Sebastopol.

16. The true names and capacities, whether individual, corporate, associate or otherwise, of defendants DOES 1 through 25 inclusive, are unknown to the Plaintiffs, who therefore sue said defendants by such fictitious names. Defendants DOES 1 through 25, and each of them, were responsible in some manner for the injuries and damages alleged herein. Plaintiffs are informed and believe and thereupon alleges upon information and belief that each of them is responsible, in some manner, for the injuries and damages alleged herein.

17. In doing the acts and/or omissions alleged herein, the individual defendants, including DOES 1 through 25, acted in concert with each of said other defendants herein.

18. At all relevant times, Mark Essick acted under color of state law in the course and scope of his duties as the Sheriff of Sonoma County.

19. At all relevant times, Charles Blount and Jason Little acted under color of state law in the course and scope of their duties as agents and employees of the County of Sonoma.

20. At all relevant times, Andrew Bauer acted under color of state law in the course and scope of his duties as an agent and employee of the City of Sebastopol.

21. Each of the Defendants caused and is responsible for the unlawful conduct resulting in the death of David Ward by personally participating in the conduct, or acting jointly and in concert with others who did so; or by authorizing, acquiescing or failing to take action to prevent the unlawful conduct; or by promulgating policies and procedures pursuant to which the unlawful conduct occurred; or by failing and refusing to initiate and maintain adequate supervision, discipline, and/or training.

## STATEMENT OF FACTS

22. David Ward was fifty-two years old when he was killed by Sonoma County Deputy Sheriffs Charles Blount and Jason Little. David was a disabled person who for many years had been mostly confined to a wheelchair following a horrible automobile accident suffered years earlier. As a result of that accident, David had eighteen inches of steel plates implanted in his neck and spine. David was frail, his mobility greatly limited, and he often relied on supplemental oxygen to breath. He was the beloved son of Ernestine Ward.

23. On November 23, 2019, David was the victim of a carjacking, and had his car stolen by his caregiver, a man named Driden Estrada. David called police to report the crime. He identified his assailant in a photo lineup, but the authorities failed to apprehend Estrada. Ultimately David learned where his car was and set out to retrieve it.

24. On November 27 a little before six a.m., David located his car and was driving it back to his house when Sonoma County Deputy Sheriff Jason Little spotted the vehicle and recognized it as having been reported stolen. The deputy attempted to stop the vehicle, but for unknown reasons David did not pull over. Two City of Sebastopol police officers, Officers Stockton and Bauer, joined the pursuit, which lasted for approximately seven minutes until Deputy Little rammed David's vehicle off the side of the road at 5:59 a.m.

25. Deputy Little alighted from his vehicle, pointed his firearm at David, and began yelling for the driver to show his hands, but David drove away. Deputy Little resumed pursuit, and about one minute later drove his patrol vehicle into the back of David's car, forcing it off the road. Deputy Little exited his patrol vehicle and placed David at gunpoint, commanding him to show his hands. David raised his hands as other officers arrived on scene, then dropped them to his lap. The officers on scene continued to command David to put his hands in the air, which he would do, only to drop them to his lap again moments later, making it appear that David was having difficulty keeping his hands above his head. Deputy Little advised dispatch that he did not see any weapons.

26. Deputy Charles Blount arrived on scene moments later. At this time David's hands were clearly visible on top of his head. Deputy Blount assumed control of the situation, and without taking even a moment to assess what had transpired, stepped in front of Deputy Little and proceeded to the car with his pistol drawn and pointed at David's head. As Deputy Blount approached the vehicle, it became clear through the closed window that David appeared to have been the victim of a physical assault. His eye was blackened and his face bruise. With his gun trained on David, Blount attempted to open the driver's door, but the it appeared to be locked.

27. Blount ordered David to unlock the door with one hand, and David complied. David then rolled down his window and addressed the deputies. "I can't believe this," he said. "I'm the injured party in this." "Don't move your fucking hands," Deputy Little replied. "Why are you fucking harassing me all the time? What is it?" David asked.

28. Blount holstered his firearm, reached in through the open window, and without warning grabbed ahold of David and attempted to pull the disabled man out of the window. David began to scream in pain as his body, largely immobilized by the metal plates in his neck and back, was wrenched and torqued by the much larger sheriff's deputy. With his body nearly halfway out of the vehicle, David's legs became stuck under the steering wheel, but Blount continued to pull David by his arm and by his hair, yelling, "Get the fuck out of the car! Get the fuck out of the car!"

29. David screamed in pain, crying "My legs! My legs!" Deputy Little called out, "His leg's under the wheel," but Blount continued to pull on the disabled man by his head, despite David's screams of pain. "He's stuck, Charlie," Deputy Little said. But even if he had not been stuck, owing to his disability it would have taken David ten minutes to get out of the car unassisted. But Deputy Blount, who had all the time in the world, had none for David.

30. "He bit me," said Blount, and wearing illegal gloves with hardened carbon fiber knuckles, began punching David in the head, striking him at least five or six times. Possession of these gloves is a misdemeanor in California, and prohibited by Sheriff's policy (Cal. Pen Code Secs. 21710, 16405). David called out, "Help me!" but no one intervened. Deputy Little drew his Taser and pointed it at David's chest at point blank range while Blount grabbed David's head with both hands and smashed it against the front pillar of the car door. Blount pulled David's head back again, wound up, and slammed David's head into the car pillar again with brutal force as Deputy Little unnecessarily and maliciously deployed the Taser into David's chest, cycling the weapon for five seconds, and then again for five seconds more.

31. Before the Taser could finish its second cycle, Deputy Blount reached in through the window, wrapped his arm around David's neck, and began to choke him. For at least thirty-eight

seconds Blount restricted oxygen to David's lungs and cut off blood to his brain. As Blount continued to choke David, Deputy Little called the decedent a "motherfucker," and made no efforts to stop Blount from beating or choking David, despite having every opportunity to do so, and despite the obvious danger unfolding before him.

32. When Blount finally released his grasp, David was limp and making gurgling and moaning sounds. Sebastopol Police Officer Stockton broke the passenger-side window, unlocked the door, and was able to remove David's limp body to the ground outside the vehicle. Additional deputies began arriving on scene.

33. Through all of these events, Officer Andrew Bauer, a former Sonoma County deputy sheriff, looked on within arm's reach of Blount, but made no attempt to stop the out-of-control deputy. Despite the obvious excessive force unfolding before him, ample time to take action, and Bauer's explicit duty to intervene, the officer uttered not so much as offer a single word of caution or restraint as David's life was choked out of him. He failed to intervene and take any action to stop Blount and Little from causing harm and serious injury to the weak and vulnerable David Ward.

34. The officers pulled David's body out of the vehicle and placed him face-down on the ground, while Deputy Little folded David's legs into a figure-four control hold, placing pressure on his body and eliminating any chance David could move. The officers cuffed David behind his back, further restricting his ability to draw breath. "Motherfucker," said Deputy Little again as he placed his weight on David's backside. "He fuckin' bit me too." Other deputies began arriving on scene.

35. After David had been laying prone for a little over a minute, an unknown officer called out, "Is he conscious?" Deputy Little looked down, rubbed David's back and saw no response. "No. We need medical, man." Little responded. "Roll him on his side," someone said, and the officers rolled him over.

36. Deputy Falberg began rubbing David's sternum, calling out, "Hey, man. Wake up!" But David would not wake up. The deputies observed that David was still breathing.

37. Deputy Jax then recognized David as the owner of the car, and that he was the victim of the carjacking that had been reported earlier. "This guy, this is the owner of this car. That's David Ward. He's the victim of the 215." "Then why did he run?" asked Deputy Little. "I don't know why he ran," said Jax. "I was out with him earlier, like two hours ago at his house. The car wasn't here at the time. Obviously he went and made contact somehow with the guy and got it. But he was here two hours ago. This is him." Blount responded, "Oh, well."

38. About that time deputies noticed that David was no longer breathing, and they began CPR. Live saving efforts were unsuccessful, and David died on the ground still in handcuffs. The Marin County Coroner mannered the death a homicide, and found that David died of cardiorespiratory collapse following blunt impact injuries, neck restraint, and application of the Taser.

39. These events were captured on other officers' body-worn cameras. Blount, though equipped with a body-worn camera, and though required by policy to have it activated at all times while on calls for service, never turned his on.

40. In the years preceding these events, Charles Blount was known to Sheriff Mark Essick for having a propensity for excessive force, particularly in the use of chokeholds. On January 23, 2015 he choked C.M., a disabled woman, from behind in an almost identical manner, then violently slammed her body to the ground. The precipitating offense was jaywalking. Unbeknownst to Blount, a civilian has recorded the interaction with his cell phone video camera. In the subsequent prosecution of C.M. for resisting arrest, Blount perjured himself in sworn testimony claiming that he had never placed his arms or hands about C.M.'s throat. The cellphone video was then played in court, and the criminal case against C.M. was dismissed. The Sheriff's Office undertook an internal investigation of these events and determined that Blount acted within policy and was not untruthful on the stand, despite a Superior Court Judge having found his testimony dishonest. No discipline or retraining was ever imposed.

41. On April 4, 2015, Blount responded to a call for medical service for an intoxicated man, M.C., who had fallen inside a home and become unconscious. After arriving on scene, the

man regained consciousness on the floor and began to struggle with the medic attending to him. Blount intervened by violently and unnecessarily placing M.C. in a carotid restraint, forcing him onto his stomach, and choking M.C. until the patient again lost consciousness. He then arrested M.C. and several other members of M.C.'s family who had protested the deputy's violent behavior. A firefighter on scene said that it looked as if Blount felt he had "carte blanche to kick anybody's ass." Sheriff Mark Essick was aware of these events. The Sheriff's Office elected to conduct no internal investigation, to impose no discipline, and to not retrain Blount.

42. In early 2019, Blount's supervisor reviewed a use of force incident in which Blount improperly used a carotid choke on a subject. The supervisor recognized the danger in Blount's use of the chokehold, counseled Blount on the event, and recommended to Sheriff Essick that Blount be retrained in use of force, specifically the carotid choke. Blount then complained to the chain of command that he was being treated unfairly, and instead of ordering the retraining requested, the Sheriff Essick began disciplinary proceedings against the supervisor. In so doing, Sheriff Essick not only failed to act to prevent Blount from continuing to engage in such dangerous conduct, despite being well aware of the risks, but he openly endorsed and approved of Blount's dangerous conduct. It was only a few months later that Blount killed David Ward.

43. Following the events giving rise to this lawsuit, Sheriff Mark Essick announced that he would fire Deputy Blount. This decision was widely reported in state and national news, and praised locally. But once public scrutiny had passed, Essick failed to follow through on his promise, and quietly allowed Blount to retire from the office with his benefits intact. This betrayal of the public trust was simply the final official failure in a years-long history of departmental cover for violent policemen.

44. Sheriff Essick knew unequivocally that Blount was dangerous, knew he was violent, and personally knew that Blount's direct supervisor had explicitly requested he receive remedial training specific to the use of chokeholds. The Sheriff further knew that several of Blount's prior patrol partners had described him as out-of-control and prone to unnecessary violence, and that in addition to the events described above, the Sheriff knew that Blount had additionally been the

subject of not less than *four* civil rights lawsuits. The Sheriff knew that Blount wore illegal hardened knuckles as a matter of routine. Yet no remedial action was ever taken during Blount's tenure at the Sonoma County Sheriff's Office. No discipline was ever imposed. No retraining ever occurred. This approval of Blount's violence from the highest level of the Sheriff's Office caused the public to remain exposed to a man who sooner or later was going to kill someone, and who ultimately did.

## STATEMENT OF DAMAGES

45. As a result of the acts and/or omissions alleged herein Plaintiff David Ward, bringing this action by and through his Estate, suffered general damages including extreme and severe pain and suffering in an amount to be determined according to proof.

46. As a result of the acts and/or omissions alleged herein Plaintiff Ernestine Ward was deprived of familial association with her son including the loss of his comfort and society in an amount to be determined according to proof.

47. The acts and omissions of Defendants Charles Blount, Jason Little and Mark Essick were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of Plaintiffs. Plaintiffs therefore pray for an award of punitive and exemplary damages against this defendant in an amount according to proof.

48. Plaintiffs have retained private counsel to represent them in this matter and are entitled to an award of attorneys' fees and costs.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**[42 U.S.C. §1983 – EXCESSIVE FORCE – DEFENDANTS BLOUNT AND LITTLE]**

49. Plaintiff hereby alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this Complaint.

50. Defendants Blount and Little violated David Ward's clearly established right to be free from excessive and unreasonable force as guaranteed by the Fourth Amendment to the United States Constitution.

51. An objectively reasonable officer would have known that the use of excessive and unreasonable force on David Ward would cause severe and excruciating pain and suffering.

52. Defendants Blount and Little acted willfully, wantonly, maliciously, oppressively, and with conscious disregard to David's rights.

53. These defendants' misconduct caused David to suffer excruciating pain and fear before he died.

WHEREFORE, Plaintiff Estate of David Ward prays for relief as hereinafter set forth.

### SECOND CAUSE OF ACTION
**[42 U.S.C. §1983 – FAILURE TO INTERVENE – DEFENDANTS BAUER AND LITTLE]**

54. Plaintiffs hereby allege and incorporate by reference as though fully set forth herein all prior paragraphs of this Complaint.

55. Defendant Bauer had a duty to intercede when Deputies Blount and Little, in his immediate presence, violated David's constitutional rights. Defendant Bauer had the time, ability, and opportunity to observe what was happening to David and to stop it. He owed David that basic duty. But Defendant Bauer stood by mute as David was killed in front of him.

56. Defendant Little had a duty to intercede when Deputy Blount, in his immediate presence, violated David's constitutional rights. Defendant Bauer had the time, ability, and opportunity to observe Deputy Blount continuing to choke David to death even after his own use of force had ended. Defendant Little owed David that basic duty, but he did nothing to stop the deadly force occurring in front of him.

57. Any objectively reasonable officer would have known it was necessary to intercede and intervene to stop David from being seriously injured or killed.

58. Defendants Little and Bauer's failure to intercede and intervene were moving forces that caused David Ward's injuries, suffering and death.

WHEREFORE, Plaintiff Estate of David Ward prays for relief as hereinafter set forth.

**THIRD CAUSE OF ACTION**
**[42 U.S.C. §1983 – DEPRIVATION OF FAMILIAL ASSOCIATION –**
**DEFENDANTS BLOUNT AND LITTLE]**

59.     Plaintiffs hereby re-allege and incorporate by reference as though fully set forth herein all prior paragraphs of this Complaint.

60.     By and through the acts and omissions alleged herein, Defendants Blount and Little deprived Ernestine Ward of the familial relationship with her son, thereby violating Plaintiff Ernestine Ward's rights under the First and Fourteenth Amendments to the Constitution of the United States. These defendants acted with deliberate indifference and/or a purpose to harm David Ward, thus causing his death.

WHEREFORE, Plaintiff Ernestine Ward prays for relief as hereinafter set forth.

**FOURTH CAUSE OF ACTION**
**[42 U.S.C. §1983 – SUPERVISORY LIABILITY – DEFENDANT ESSICK]**

61.     Plaintiffs hereby reallege and incorporate by reference as though fully set forth herein all prior paragraphs of the Complaint.

62.     In 2014 Defendant Mark Essick was the Lieutenant at the Sonoma County Sheriff's Office in charge of personnel and internal affairs. In 2016 Defendant Essick was the Captain at the Sonoma County Sheriff's Office in command of the Field Services Division. In 2017, he commanded the office's professional standards, investigations, and personnel divisions In June of 2018 he was elected Sheriff of Sonoma County. In these capacities, Defendant Essick was on notice for many years of Defendant Blount's propensity for violence and pattern and practice of using excessive and unreasonable causing serious injuries to weak, vulnerable, and defenseless citizens.  Sheriff Essick also had specific notice of Blount's repeated misuse of the carotid chokehold, and in 2019 overruled Blount's supervisor's recommendation that Blount receive remedial training in its use.

63.     Essick knew that Blount was dangerous and out-of-control, and that he had a years-long history of excessive force. Yet he failed to take any remedial steps to prevent future constitutional violations, and even stood in the way of others who attempted to do the right thing.

Defendant Essick engaged in conduct through these acts and omissions that demonstrated a reckless and callous indifference to the rights of the public he was elected to serve, to include David Ward.

64. The conduct of Defendant Essick was so closely related to the deprivation of Plaintiffs' rights as to have been the moving force that caused David's suffering and death.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

#### FIFTH CAUSE OF ACTION
[42 U.S.C. §1983 – MUNICIPAL LIABILITY FOR UNCONSTITUTIONAL CUSTOMS AND PRACTICES – DEFENDANT COUNTY OF SONOMA]

65. Plaintiff hereby re-alleges and incorporates through reference all prior paragraphs of the Complaint.

66. On or before November 27 and prior to David's death, Defendant County of Sonoma was aware that Blount had engaged in a custom and practice of reckless and dangerous use of violence, and in particular chokeholds, as summarized above in paragraphs 40-42.

67. Through its final policymakers the County of Sonoma, acting with deliberate indifference to the rights of David and his family, and of the public in general, knowingly maintained, enforced, and applied customs and practices of:

    a. Encouraging, accommodating, or ratifying Blount's use of excessive, unreasonable, and sometimes deadly force;

    b. Encouraging, accommodating, or facilitating a code of silence among deputies, employees, and supervisors, pursuant to which false reports were generated, excessive and unreasonable force was covered up, whistleblowers were punished, internal investigations were performed with predetermined outcomes, and documented instances of perjury and dishonesty were ignored. Blount was aware of this, and previously testified under oath that during his nearly twenty years at the Sheriff's office, he had NEVER heard of any deputy ever reporting on another for the use of excessive or unnecessary force;

    c. Employing and retaining deputies such as Blount who the County knew or in the exercise of reasonable care should have known were violent, abused their authority, and mistreated members of the public;

    d. Inadequately supervising, training, and disciplining deputies including Blount, who the County knew or in the exercise of reasonable care should have known were violent, abused their authority, and mistreated members of the public;

    e. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the reckless and intentional misconduct by deputies;

    f. And by NEVER disciplining deputies for excessive force, no matter the circumstances, thereby adopting a de facto policy that deputies would never be disciplined no matter how much force they used no matter what. Deputy Blount was aware of this practice, and recently testified under oath that as far as he was aware, no employee of the Sonoma County Sheriff's Office had EVER been disciplined for excessive force.

68. By reason of the aforementioned customs and practices, David Ward was grievously injured and subjected to unbearable and excruciating pain and suffering, and ultimately killed.

69. The County of Sonoma through officials named and unnamed had actual or constructive knowledge of the constitutionally deficient customs and practices alleged above. But despite this knowledge, the County of Sonoma accepted and condoned these illegal customs and practices, thereby ratifying them, and acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to rights of David, his family, and the general public.

70. These customs and practices were so closely related to the deprivation of Plaintiffs' rights as to be the moving force that caused the ultimate injuries to David Ward and Ernestine Ward.

71.     By reason of the aforementioned acts and omissions, David Ward was killed and his mother suffered the irreparable loss of his love, affection, society, and moral support.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### PENDENT STATE CLAIMS
### SIXTH CAUSE OF ACTION

[WRONGFUL DEATH/NEGLIGENCE PER SE – DEFENDANTS COUNTY OF SONOMA AND BLOUNT]

72.     Plaintiff hereby re-alleges and incorporates through reference all prior paragraphs of the Complaint.

73.     Defendant Blount, while working in the course and scope of his employment as a Sonoma County deputy sheriff, employed negligent tactics and intentionally and/or without due care killed David Ward. David's death directly resulted from Blount's unsafe, improper, unnecessary, and negligent tactics, and as a result of these intentional and negligent acts, David Ward suffered serious injuries and ultimately died. Blount lacked any reasonable justification for killing David Ward.

74.     Blount's actions were in direct violation of Cal. Pen. Code Sec. 243(d), battery causing serious bodily injury.

75.     Blount's actions were in direct violation of Cal. Pen. Code Sec. 245(a)(1), assault with a deadly weapon.

76.     Blount's actions were in direct violation of Cal. Pen. Code Sec. 245(a)(4), assault with force likely to cause great bodily injury.

77.     Blount's actions were in direct violation of Cal. Pen. Code Sec. 192(a), voluntary manslaughter, 192(b), involuntary manslaughter, and/or 187(a), murder in the second degree.

78.     The violations of these laws were a substantial factor in causing the death of David Ward.

79.     The County of Sonoma is vicariously liable for the unlawful acts and omissions of Charles Blount as alleged herein.

WHEREFORE, Plaintiff Ernestine Ward prays for relief as hereinafter set forth.

### SEVENTH CAUSE OF ACTION
[NEGLIGENT TRAINING, SUPERVISION, AND RETENTION – DEFENDANT COUNTY OF SONOMA]

80. Plaintiff hereby re-alleges and incorporates by reference all prior paragraphs of the Complaint.

81. The County of Sonoma hired Charles Blount as a Deputy Sheriff.

82. The County of Sonoma became aware that Charles Blount was unfit to perform the work for which he was hired. Prior to November 27, 2019, the County of Sonoma knew that Blount had a history and practice of using excessive force on weak and vulnerable citizens, and specifically that he regularly, excessively, unreasonably, and improperly employed potentially lethal carotid chokeholds creating a significant and substantial risk to the public. Despite this knowledge, the County refused to address Blount's glaring deficiencies as a deputy sheriff and allowed his dangerousness to go unmitigated, without training, discipline, or termination.

83. The negligence of the County of Sonoma in training, supervising and retaining Charles Blount was a substantial factor in causing the death of David Ward.

WHEREFORE, Plaintiff Ernestine Ward prays for relief as hereinafter set forth.

### PRAYER FOR RELIEF

Plaintiff prays for relief as follows:

1. For compensatory and economic damages according to proof;
2. For general damages according to proof;
3. For an award of exemplary or punitive damages against the individual defendants;
4. For an award of attorneys' fees and costs as permitted by law; and
5. For such other and further relief as the Court may deem necessary and appropriate.

### JURY TRIAL DEMANDED

Plaintiff hereby requests a jury trial on all issues so triable.

Dated: May 19, 2020                           SCHWAIGER LAW FIRM

                                              By: /s/ Izaak D. Schwaiger
                                                  Izaak D. Schwaiger
                                                  Attorney for Plaintiffs